## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **OWNERS INSURANCE COMPANY, a stock insurance company incorporated and organized under the laws of the State of Ohio,** )<br>)<br>)<br>)<br>) | |
| **Plaintiff,** )<br>) | |
| **v.** )<br>) | **CASE NO.: 3:18-cv-00377-WC** |
| **GTR, INC., a/k/a and/or f/k/a GRAHAM'S TOTAL RESTORATION, INC., an Alabama corporation; EDDIE GOODEN, an individual; and CATHERINE GOODEN, an individual,** )<br>)<br>)<br>)<br>)<br>) | |
| **Defendants.** ) | |

### NARRATIVE SUMMARY OF UNDISPUTED FACTS AND BRIEF OF PLAINTIFF OWNERS INSURANCE COMPANY IN SUPPORT MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT, OR MOTION FOR JUDGMENT BY DEFAULT AS TO CERTAIN DEFENDANTS

**COMES NOW** Plaintiff Owners Insurance Company ("Owners Insurance") and files this narrative summary of undisputed facts and brief in support of Owners Insurance's Motion for Judgment on the Pleadings or, in the alternative, Motion for Summary Judgment against all Defendants, or Motion for Judgment by Default against Defendants Eddie Gooden and Catherine Gooden, filed contemporaneously herewith:

### I. NARRATIVE SUMMARY OF UNDISPUTED FACTS

#### A.    Introduction

Owners Insurance filed this declaratory judgment action seeking a determination

that Owners Insurance does not owe insurance coverage for a defense or indemnity to GTR, Inc., a/k/a and/or f/k/a Graham's Total Restoration, Inc. (collectively referred to as "GTR"), for the claims asserted against GTR, Inc., a/k/a and/or f/k/a Graham's Total Restoration, Inc., in the action styled *Eddie Gooden and Catherine Gooden v. ALFA Mutual General Insurance Company; Grahams Total Restoration, Inc.; Cleaning Services, Inc., et al.,* Civil Action No.: 2016-900034, pending in the Circuit Court of Chambers County, Alabama (hereinafter referred to as "Underlying Suit" or "CV-2016-900034").

## B.    Undisputed Facts

The following facts are undisputed:

### *This Declaratory Judgment Action*

1.      This action is a declaratory judgment action wherein Plaintiff, Owners Insurance Company, seeks a determination and judgment declaring that a Tailored Protection Policy of insurance containing, *inter alia*, a Commercial General Liability (CGL) coverage issued to GTR, Inc., for the policy periods from January 5, 2012 to January 5, 2013, and from January 5, 2013 to September 7, 2013 (date of cancellation) do not provide liability insurance coverage for the claims, allegations, damages, and/or actions alleged in that certain civil action styled *Eddie Gooden and Catherine Gooden v. ALFA Mutual General Insurance Company; Grahams Total Restoration, Inc.; Cleaning Services, Inc., et al.,* Civil Action No.: 2016-900034, pending in the in the Circuit Court of Chambers County, Alabama.  [Doc. 1].

2.      An answer to the complaint for declaratory judgment filed herein has been

filed on behalf of Defendant, GTR. [Doc. 10].  The default of Defendants, Eddie Gooden and Catherine Gooden have been entered by the Clerk of this Court.  [Doc. 13 and 14]. Defendants, Eddie Gooden and Catherine Gooden were both served with the summons and complaint on April 5, 2018.  [See, Doc. 6, 7 and 13; Evidentiary Submission Exhibit "7"].  As of the date and time of filing of Plaintiff's motions and this brief, no answer or other response by Defendants Eddie Gooden and Catherine Gooden have been filed.

### *The Underlying Suit*

3.     On March 15, 2016, Eddie Gooden and Catherine Gooden (collectively referred to as the "Goodens") filed suit against ALFA Mutual General Insurance Company ("ALFA"), Grahams Total Restoration, Inc., Cleaning Services, Inc. ("CSI"), and certain fictitious defendants in the Circuit Court of Chambers County, Alabama. [See Doc.1-1].  The suit was styled *Eddie Gooden and Catherine Gooden v. ALFA Mutual General Insurance Company; Grahams Total Restoration, Inc.; Cleaning Services, Inc., et al.,* Civil Action No.: 2016-900034.  A true and correct copy of the original Complaint in the Underlying Suit is attached to Owners Insurance's Evidentiary Submission as Exhibit "1".  [See also Doc. 1-1].

4.     On August 15, 2016, a First Amended Complaint was filed in the Underlying Suit.  A true and correct copy of the First Amended Complaint filed in the Underlying Suit is attached to Owners Insurance's Evidentiary Submission as Exhibit "2".  [See also Doc. 1-2].

5.     On November 17, 2016, a Second Amended Complaint was filed in the Underlying Suit.  A true and correct copy of the Second Amended Complaint filed in the

3

Underlying Suit is attached to Owners Insurance's Evidentiary Submission as Exhibit "3".[1]  [See also Doc. 1-3].

6.     The Complaint, as amended, contains ten claims alleging breach of contract – ALFA (Count One Complaint); fraud/bad faith – ALFA (Count Two Complaint); bad faith refusal to pay – ALFA (Count Three Complaint); bad faith refusal to pay – ALFA (Count Four Complaint); breach of fiduciary duty/wantonness/fraud/misrepresentation – ALFA (Count Five Complaint); fraud/wantonness/intentional misconduct – ALFA (Count Six Complaint); conversion/unjust enrichment – ALFA, GTR, CSI (Count Seven Complaint); negligence and wantonness – GTR and CSI (Count Eight); mold/nuisance-GTR and CSI (Count Nine); breach of fiduciary duty – ALFA (Count Five-First Amended Complaint); negligence and wantonness – GTR and CSI (Count Eight-First Amended Complaint); and breach of contract – CSI (Count Ten-Second Amended Complaint).  Only Counts Seven, Eight, and Nine contained in the original Complaint [Doc. 1-1], and Count Eight of the First Amended Complaint in the Underlying Suit [Ex. 1-2] assert claims against, and demand judgment against GTR.  [See Doc. 1-1, 1-2 and 1-3].

7.     The Facts section of the original Complaint in the Underlying Suit alleges, *inter alia*, GTR and CSI were retained to perform repairs, remove, remediate and/or clean the damaged home and personal property of the Goodens following May 21, 2012 lightning and fire damage to the Gooden's home.  [Doc.1-1 and Ex. "1" at ¶¶ 9, 12 and

---

[1] Exhibits to Owners Insurance's Evidentiary Submission filed contemporaneously herewith are hereinafter referred to by the abbreviation Ex.  Followed by the Evidentiary Submission number.

13].  The Facts section of the original Complaint in the Underlying Suit filed on March 15, 2016, also alleges that the Goodens recently discovered the existence and presence of toxic mold in the areas of the home that were damaged by the lightning and fire event which GTR and CSI purportedly repaired, remediated and removed and/or cleaned. [Doc. 1-1 and Ex. "1" at ¶ 15].  The Facts section of the original Complaint in the Underlying Suit further alleges the conduct by all defendants in the Underlying Suit was intentional, gross, wanton, malicious and/or oppressive.  [Doc. 1-1 and Ex. "1" at ¶ 24]. Each succeeding Count and claim alleged in the Complaint and amendments in the Underlying Suit realleges and incorporates by reference all preceding paragraphs.  [Doc. 1-1 and Ex. "1" at ¶¶ 25, 32, 42, 52, 61, 65, 73, 76 and 80; Doc. 1-2 and Ex. "2" at ¶¶ 61 and 76; Doc. 1-3 and Ex. "3" at ¶ 84].  The specific allegations of the Complaint, as amended, in the Underlying Suit are set forth in the exhibits to Owners Insurance's evidentiary submission and are referred to for the specific allegations.  [Ex "1", "2", and "3"; Doc. 1-1, 1-2, and 1-3].

8.     Owners Insurance Owners Insurance is currently providing a defense to GTR in the Underlying Suit under a full and complete reservation of rights.

### *Tailored Protection Policy*

9.     Owners Insurance issued a Tailored Protection Policy of insurance which contained Commercial General Liability (CGL) coverage to GTR, Inc., for the policy period from January 5, 2012 to January 5, 2013, and for the policy period from January 5, 2013 to September 7, 2013 (date of cancellation).  [Doc. 1 at ¶¶ 12 and 13 and Doc. 10 at ¶¶ 12 and 13].  True and Correct Copy of the pertinent Tailored Protection Policies and

an Authenticating Affidavits of Brandon Niven are attached to Owners Insurance's Evidentiary Submission as Exhibits "4" and "5". [See Doc. 1-4 and 1-5]. The entire contents of Exhibits "4" and "5" are hereby adopted and incorporated by reference as if fully set forth herein and are referred to for the specific policy language thereof.

10.     The Owners Insurance Tailored Protection Policy of insurance contained Commercial General Liability (CGL) coverage [Form 55300 (7-05)] which provided certain insurance coverage, as defined and limited in the policy, against damages that the insured became legally obligated to pay because of bodily injury, property damage, personal injury or advertising injury to which the insurance applies under the CGL coverage. [See Ex. "4" and "5"; see also, Doc. 1-4 at pp. 12-32 and 1-5 at pp. 13-33]. Said CGL coverage contained a number of limitations, exclusions, conditions and terms. [See *Id*]. Section I, Coverage A of the CGL coverage only provides coverage for bodily injury and property damage as defined and limited in the policy. Section I, Coverage B of the CGL coverage only provides coverage for personal injury and advertising injury liability as defined and limited in the policy. The CGL coverage of both policies provides as follows:

**SECTION I – COVERAGES**
**COVERAGE A. BODILY INJURY AND PROPERTY**
**DAMAGE LIABILITY**

**1.     Insuring Agreement**

    **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any claim or "occurrence" and

settle any claim or "suit" that may result.  But:

**(1)**    The amount we will pay for damages is limited as described in Section **III** - Limits of Insurance; and

**(2)**    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.**    This insurance applies to "bodily injury" and "property damage" only if:

**(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

**(3)**    Prior to the policy period, no insured listed under Paragraph **1**. Of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily Injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.**    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1**. of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)**    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)**     Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)**     Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

* * *

**2.**     **Exclusions**

This insurance does not apply to:

**a.**     **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.**     **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

**(1)**     Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  However, if the insurance under this policy does not apply to the liability of the insured, it also does not apply to such liability assumed by the insured under an "insured contract".

**(2)**     That the insured would have in the absence of the contract or agreement.

* * *

**j.**     **Damage to Property**

"Property damage" to:

8

**(1)**   Property you own, rent, occupy or use, including any cost or expense incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)**   Property that any of your:

    **(a)**   "Employees";

    **(b)**   "Volunteer workers";

    **(c)**   Partners or members (if you are a partnership or joint venture); or

    **(d)**   Members (if you are a limited liability company)

own, rent, occupy or use.  However, this exclusion **j.(2)**, shall not apply to your liability for damage to such property;

**(3)**   Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(4)**   Property loaned to you;

**(5)**   Personal property in the care, custody or control of, or over which physical control is being exercised for any purpose by any insured;

**(6)**   That particular part of real property on which any insured or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(7)**   That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(2)**, **(4)** and **(5)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days.  A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** - Limits Of Insurance.

Paragraph **(3)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(4)**, **(5)**, **(6)** and **(7)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(7)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.**   **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.**   **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

**m.**   **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**   A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

\* \* \*

**o.**     **Personal Injury And Advertising Injury**

"Bodily injury" arising out of "personal injury" or "advertising injury".

\* \* \*

## COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY

**1.**     **Insuring Agreement**

**a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  We may at our discretion investigate any claim or offense and settle any claim or "suit" that may result.  But:

**(1)**     The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

**(2)**     Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b**.     This insurance applies to "personal injury" and "advertising injury" only if:

11

(1) The "personal injury" or "advertising injury" is caused by an offense arising out of your business; and

(2) The offense causing the "personal injury" or "advertising injury" was committed in the "coverage territory" during the policy period.

2.    **Exclusions**

This insurance does not apply to "personal injury" or "advertising injury":

a.    **Knowing Violation Of Rights Of Another Or Expected Or Intended Injury**

(1) Caused by or at the direction of any insured with the knowledge that the act would violate the rights of another and would inflict "personal injury" or "advertising injury"; or

(2) Expected or intended by any insured.  This exclusion **a.(2)**, does not apply to "personal injury".

b.    **Material Published With Knowledge Of Falsity**

Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c.    **Material Published Prior To Policy Period**

Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d.    **Criminal Acts**

Arising out of a criminal act or violation of a penal statute or ordinance committed by or at the direction of the insured.

e.    **Contractual Liability**

For which the insured has assumed liability in a contract or

agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f.     Breach Of Contract**

Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g.     Quality Or Performance Of Goods - Failure To Conform To Statements Or Representations**

Arising out of the failure of goods, products or services to conform with any statement or representation of quality or performance made in your "advertisement".

**h.     Wrong Description Of Prices**

Arising out of the wrong description of the price of goods, products or services.

\* \* \*

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

\* \* \*

**2.**     [As amended by Endorsement 55091(10-08)] **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.**     You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)**     How, when and where the "occurrence" or offense took place;

**(2)**     The names and addresses of any injured persons and witnesses; and

**(3)**     The nature and location of any injury or damage arising out of the "occurrence" or offense.

13

**b.**　　If any claim is made or "suit" is brought against any insured,

you must:

　　**(1)**　　Immediately record the specifics of any claim or "suit" and the date received; and

　　**(2)**　　Notify us as soon as practicable.

You must see to it that we receive written notice of any claim or "suit" as soon as practicable.

**c.**　　You and any other involved insured must:

　　**(1)**　　Immediately send us copies of any correspondence, demands, notices, summonses or papers in connection with any claim or "suit";

　　**(2)**　　Authorize us to obtain records and other information;

　　**(3)**　　Cooperate with us in the investigation or settlement of any claim or defense of any "suit"; and

　　**(4)**　　Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.**　　No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## SECTION V - DEFINITIONS

* * *

**2.**　　"Advertising injury" means injury arising out of one or more of the following offenses:

**a.**　　Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services in your "advertisement";

14

**b.**    Oral or written publication, in any manner, of material that violates a person's right of privacy in your "advertisement";

**c.**    The use of another's advertising idea in your "advertisement"; or

**d.**    Infringing upon another's copyright, "trade dress" or slogan in your "advertisement".

* * *

**4.**    "Bodily injury" means bodily injury, bodily sickness or bodily disease sustained by a person, including death resulting from any of these at any time.

* * *

**11.**    "Insured contract" means:

**a.**    A contract for a lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.**    A sidetrack agreement;

**c.**    Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.**    An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.**    An elevator maintenance agreement; or

**f.**    That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property

damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)**  That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)**  That indemnified an architect, engineer or surveyor for injury or damage arising out of:

   **(a)**  Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   **(b)**  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)**  Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

* * *

**15.**  [As amended by endorsement 55091 (10-08)] "Personal injury" means other than "bodily injury" arising out of one or more of the following offenses:

   **a.**  False arrest, detention or imprisonment;

**b.**     Malicious prosecution;

**c.**     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.**     Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

**e.**     Oral or written publication, in any manner, of material that violates a person's right of privacy.

**f**.     Discrimination humiliation, sexual harassment and any violation of civil rights caused by such discrimination, humiliation or sexual harassment

\* \* \*

**18.**   "Property damage" means:

**a**.     Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**     Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

**26.**   "Your product":

**a.**     Means:

**(1)**   Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)**   You;

**(b)**   Others trading under your name; or

**(c)**   A person or organization whose business or assets you have acquired; and

**(2)**   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.**   Includes:

**(1)**   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)**   The providing of or failure to provide warnings or instructions.

**c.**   Does not include vending machines or other property rented to or located for the use of others but not sold.

**27.**   "Your work":

**a.**   Means:

**(1)**   Work or operations performed by you or on your behalf; and

**(2)**   Materials, parts or equipment furnished in connection with such work or operations.

**b.**   Includes:

**(1)**   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)**   The providing of or failure to provide warnings or instructions.

[See Ex. "4" and "5"; see also, Doc. 1-4 at pp. 12-32 and Doc. 1-5 at pp. 13-33].

11.   It is also undisputed that the Commercial General Liability coverage of

both Owners Insurance policies contains Fungi Or Bacteria Exclusions, [endorsement 55238 (6-04)], to the policy. [See Ex. "4" and "5"; see also, Doc. 1-4 at p. 44 and Doc. 1-5 at p. 45]. This exclusion states as follows:

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### FUNGI OR BACTERIA EXCLUSIONS

This endorsement modifies insurance provided under the following:

Commercial General Liability Coverage Part.

A.  Under **SECTION I – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABLITY, 2. Exclusions,** the following exclusions are added:

1.  [This insurance does not apply to:] Bodily injury" or "property damage" arising out of, in whole or in part, the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria, whether airborne or not, on or within a building or structure, including its contents.  This exclusion applies whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

2.  [This insurance does not apply to:] Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person, entity or governmental authority.

These exclusions do not apply to any "fungi" or bacteria that are on, or are contained in, a good or product intended for human consumption.

B.  Under **SECTION I – COVERAGES, COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY, 2. Exclusions,** the following exclusions are added:

19

**1.**     [This insurance does not apply to "personal injury" or "advertising injury":] Arising out of, in whole or in part, the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria, whether airborne or not, on or within a building or structure, including its contents.  This exclusion applies whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**2.**     [This insurance does not apply to "personal injury" or "advertising injury":] For any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person, entity or governmental authority.

**C.**     The following definition is added to **SECTION V- DEFINITIONS:**

"Fungi" means any type or form of fungus, including but not limited to, any mold, mildew, mycotoxins, spores, scents or byproducts produced or released by any type or form of fungus.

[See Ex. "4" and "5"; see also, Doc. 1-4 at p. 44 and 1-5 at p. 45].

## II. STANDARDS OF REVIEW

### A.     Judgment on the Pleadings Standard

Federal Rules of Civil Procedure Rule 12(c) states that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  A judgment on the pleadings is limited to consideration of "the substance of the pleadings and any judicially noticed facts."  *Bankers Ins, Co. v Fla Residential Prop. & Cas Joint Underwriting Ass'n.,* 137 F.3d 1293, 1295 (11th Cir. 1995).  A judgment on the pleadings pursuant to Rule 12(c) is appropriate when "no issues of material fact exist, and the movant is entitled to judgment as a matter of law."  *Ortega v. Christian,* 85 F.3d

1521, 1524 (11th Cir. 1996).   On motion for judgment on the pleadings, the court considers the complaint, answers, and the exhibits thereto.   *See, Barnett v. Baldwin Co. Bd. of Ed.,* 60 F.Supp.3d 1216, 1224 (S.D. Ala. 2014), *citing, Grossman v, Nationsbank, N.A.,* 225, F.3d. 1228, 1231 (11th Cir. 2000).   Documents referred to in a complaint and that are central to plaintiff's claims are considered as part of the pleadings for Rule 12 purposes and do not require conversion of a motion for judgment on the pleadings into a motion for summary judgment.   *See Suntrust Bank v. Shockley,* No. 5:09-cv-77/RS-MD, 2009 WL 1833458, at *1 (M.D. Fla. June 23, 2009), *citing, Brook v. Blue Cross and Blue Shield of Fla.,* 116 F.3d 1364, 1369 (11th Cir. 1997); *see also Donoghue v. American National Ins. Co.,* 838 So.2d 1032, 1036 (Ala. 2001)(consideration of insurance policy does not require conversion of pending Rule 12 motion into one for summary judgment); *Newson v. Protective Industrial Ins. Co.,* 890 So.2d 81, 83-84, 86-87 (Ala. 2003) (indisputably authentic copy of insurance policy to be considered on motion to dismiss).

**B.     Summary Judgment Standard**

Alternatively, and if the Court determines that judgment on the pleadings in favor of Owners Insurance is not appropriate, then Owners Insurance submits that summary judgment in Owners Insurance's favor is appropriate for the reasons set forth in Owners Insurance's Complaint (Doc. 1) and this brief.   "A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought."   Fed. R. Civ. P. 56(a).   "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."   Fed. R. Civ. P.

56(a).  *See, Georgia State Conf. of NAACP v. Fayette County Bd. Of Comm'rs*, 775 F.3d 1336, 1343 (11th Cir 2015); *see also, Sanders v. City of Union Springs,* 405 F.Supp.2d 1358, 1361 (M.D. Ala. 2005); *March v. Best Buy Stores, LP,* 111 F.Supp.3d 1236, 1242 (N.D. Ala. 2015).

Summary judgment is appropriate when the pleadings, depositions and affidavits submitted by the parties show that there is no genuine issue of material fact that exists and that the movant is entitled to judgment as a matter of law.  *Sanders, supra,* 405 F.Supp.2d at 1361 (citing, Fed. R. Civ. P. 56(c)).  When a party moving for summary judgment establishes an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by (his) own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *McMillian v. Johnson,* 878 F.Supp. 1473 (M.D. Ala. 1995), *quoting, Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Summary judgment would then be mandated against the non-moving party who fails to establish a genuine issue of material fact.  *Celotex Corp. v. Catrett*, *supra,* 477 U.S. at 322, 324-25.

Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, *supra,* 477 U.S. at 327.  In order to survive summary judgment, the non-moving party must rely on more than conclusory statements or allegations

unsupported by the facts. *Evers v. Gen. Motors Corp*., 770 F.2d 984, 986 (11th Cir. 1985)(court held that conclusory allegations hold no probative value). In order to defeat summary judgment, the non-movant must show by substantial evidence that the issue to be resolved is both material and genuine. The mere existence of an alleged factual dispute between the parties does not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue is material if it "affect(s) the outcome of the suit under the governing law." *Flowers v. Troup County*, 803 F.3d 1327, 1335 (11th Cir. 2015), *quoting, Anderson v. Liberty Lobby, supra*. Immaterial or minor facts in dispute do not prevent summary judgment. *Howard v. Gleason Corp*., 901 F.2d 1154, 1159 (2nd Cir. 1990).

**C.     Default Judgment As To The Gooden Defendants**

Upon entry of judgment on the pleadings or, alternatively, summary judgment in Owners Insurance's favor and against GTR, entry of default judgment in Owners Insurance's favor and against the Gooden Defendants pursuant to Fed. R. Civ. P. 55(a)(2) would also be appropriate if the Court believed default judgment was the appropriate manner of disposition as to the Gooden Defendants.

**D.     General Alabama Law Governing Insurance Policy Interpretation and Construction**

"In Alabama, insurers have the right, absent statutory provisions to the contrary, to limit their liability and to write policies with narrow coverage." *Turner v. U.S. Fidelity*

*and Guar. Co.,* 440 So.2d 1026, 1027 –1028 (Ala.1983).   Under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy, *see Colonial Life & Accident Ins. Co. v. Collins,* 280 Ala. 373, 194 So.2d 532, 535 (1967), while the insurer bears the burden of proving the applicability of any policy exclusion. *See U.S. Fidelity & Guar. Co. v. Armstrong,* 479 So.2d 1164, 1168 (Ala.1985).

In construing the language of an insurance policy, the language should be given the meaning that a person of ordinary intelligence would reasonably think the language had and its customary and normal meaning. *Miller v. Allstate Ins. Co.,* 896 So.2d 499, 503 (Ala. 2004); *National Union Fire Ins. Co. v. City of Leeds,* 530 So.2d 205, 207 (Ala.1988).   Because the language of insurance policies is framed by the insurer, the courts construe such language favorably to the insured. *See Northland Ins. Cos. v. City of Montgomery,* 418 So.2d 881, 884 (Ala.1982).   An unambiguous exclusion in an insurance policy will be enforced according to its terms. *Cook v. Aetna Ins. Co.,* 661 So.2d 1169, 1170 (Ala.1995).   If the words are reasonably certain in their meaning and are not ambiguous as a matter of law, the rule of construction in favor of the insured does not apply. *Western World Ins. Co. v. City of Tuscumbia,* 612 So.2d 1159 (Ala. 1992); *D.D.B. v. State Farm Mutual Auto Ins. Co.,* 814 So.2d 877 (Ala. Civ. App. 2001).   When "ambiguity exists in the language of an exclusion, the exclusion will be construed narrowly so as to limit the exclusion to the narrowest application reasonable under the wording." *Guaranty Nat'l Ins. Co. v. Marshall County Bd. of Educ.,* 540 So.2d 745, 748 (Ala.1989).   The mere fact that an insured contends for a different construction of the

policy does not, however, mean that the language is ambiguous. *Upton v. Mississippi Valley Title Ins. Co.,* 469 So.2d 548 (Ala.1985).

To determine an insurer's coverage obligations, two separate duties are addressed: (1) the duty to defend; and (2) the duty to indemnify. In order to determine whether the insurer is obligated to defend depends on the facts and not necessarily the legal phraseology of the complaint. *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank,* 928 So.2d 1006, 1012 (Ala. 2005). The duty to indemnify is based upon the insured's actual conduct rather than the allegations.

The Alabama Supreme Court has ruled that a determination regarding indemnification obligations before judgment is premature if the duty to indemnify will depend on the facts adduced at trial. *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So.2d 1006, 1013 (Ala. 2005). *Townsend Ford, Inc. v. Auto-Owners Ins. Co.,* 656 So.2d 360, 364 (Ala. 1995). Courts have found it appropriate to address both the duty to defend and the duty to indemnify in a declaratory judgment action where it was determined there was no duty to pay, as a matter of law. *See, State Farm Fire & Cas. Co. v. Davis,* 612 So.2d 458, 465 (Ala. 1993)(sexual misconduct case where the Court held there was no duty to pay as a matter of law). In a well-reasoned opinion, United States Magistrate Judge Moorer in *Harleysville Mut. Ins. Co. v. Dapper*, No. 2:09-cv-794-TFM, 2010 WL 2925779, at *8 (M.D. Ala. July 21, 2010), ruled on both the duty to defend and duty to indemnify, stating:

> The Court earlier stated that it would look to the duty to indemnify once a determination was made on the duty to defend. Now that the Court had made its determination, it is

axiomatic that if there is no duty to defend then there is also no duty to indemnify. "Logic and common sense dictate that if there is no duty to defend, then there must be no duty to indemnify." _American States Ins. Co. v. Bailey,_ 133 F.3d 363, 368 (5th Cir. 1998) (citing _Western Heritage Ins. Co. v. River Entertainment,_ 998 F.2d 311, 315 (5th Cir. 1993)). As such, summary judgment is appropriate as to both the duty to defend and the duty to indemnify.

_Dapper_, 2010 WL 2925779, at *8. _see also Auto-Owners Ins. Co. v. McMillan Trucking, Inc.,_ 7:16-cv-979-LSC (N. D. Ala. Mar. 15, 2017) ("The duty to defend is broader than the duty to indemnify, and as there is no duty to defend in this case, there is also no duty to indemnify.").

Owners Insurance seeks a judgment on the pleadings or, alternatively, a summary judgment against GTR and judgment on the pleadings or, alternatively, summary judgment or default judgment against the Goodens declaring as a matter of law that Owners Insurance is under no duty under the terms and provisions of the policies issued to GTR to provide a defense or indemnity to GTR for the allegations of the Underlying Suit filed by the Goodens.

## III.  DISCUSSION OF RELEVANT LEGAL AUTHORITIES

**A.  Judgment on the Pleadings or, Alternatively, Summary Judgment is Due to Be Granted in Favor of Owners insurance as No Coverage is Owed to GTR for the Underlying Suit Under the CGL Coverage of the TPP Insurance Policy Issued to GTR, Inc.**

For the reasons set forth below, Owners Insurance has no obligation to provide a defense or indemnity to GTR in the Underlying Suit under the Commercial General Liability coverage contained in the Tailored Protection Policy issued to GTR, Inc.

**(1)    The CGL Policy Does Not Provide Coverage for Bodily Injury or Property Damage that Occurred Outside of the Policy Period**.

It is undisputed that the Owners Insurance Tailored Protection Policy issued to GTR, Inc., which contained a Commercial General Liability (CGL) coverage was in force for the policy period from January 5, 2012 to January 5, 2013, and the period from January 5, 2013 to September 7, 2013 (date of cancellation).  [See; Doc. 1 at ¶¶ 12 and 13 and Doc. 10 at ¶¶ 12 and 13; see also Doc. 1-4 at p. 3 and 1-5 at pp. 3 and 9; see also Ex. "4" and "5"].

The Insuring Agreement of Section I, Coverage A of the Owners Insurance CGL Coverage expressly states that the insurance applies to bodily injury and property damage only if the bodily injury or property damage is "caused by an occurrence that takes place in the coverage territory" and only if "bodily injury or property damage occurs during the policy period."  [See; Doc. 1-4 at p. 12 ¶ 1.b.(1) and (2) and Doc. 1-5 at p. 13 ¶ 1.b.(1) and (2); see also Ex. "4" and "5"].  The Insuring Agreement further states the insurance applies only if "prior to the policy period, no insured…knew that the 'bodily injury' or 'property damage' had occurred, in whole or in part".  [See; Doc. 1-4 at p. 12 ¶ 1.b.(3) and Doc. 1-5 at p. 1 ¶ 1.b.(3)].  This portion of the CGL coverage states:

**SECTION I – COVERAGES**
**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

\* \* \*

**b.**    This insurance applies to "bodily injury" and "property damage" only if:

27

**(1)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)**  The "bodily injury" or "property damage" occurs during the policy period; and

**(3)**  Prior to the policy period, no insured listed under Paragraph **1**. Of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily Injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.**  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1**. of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)**  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)**  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)**  Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

\* \* \*

The Goodens filed suit against GTR on March 15, 2016.  [See Doc. 1-1 at p. 2].

Any potentially covered non-intentional tort claims have a two-year statute of limitations

and must have occurred on or after March 14, 2014 to be timely.  See ALA. CODE § 6-2-

38 (l) (1975).  The Owners Insurance Tailored Protection Policy ended by cancellation on

September 7, 2013.  [See; Doc. 1-5 at p. 9].  Accordingly, even if the Goodens were able to establish liability on the part of GTR, the only recoverable damages would have necessarily occurred after the end of the Owners Insurance Tailored Protection Policy and would not be covered by the Owners Insurance policy.  [See; Doc. 1-4 at p. 12 ¶ 1.b.(1) and (2) and Doc. 1-5 at p. 13 ¶ 1.b.(1) and (2); see also Ex. "4" and "5"].  As a matter of law, no damages recoverable in the Underlying Suit could have occurred during the Owners Insurance period of coverage which ended on September 7, 2013, over two years prior to the filing of the Underlying Suit.

The Alabama Supreme Court has consistently held that the time of an occurrence within the meaning of an occurrence based liability policy is not the time when the wrongful act was committed, but it is the time the complaining party was actually damaged.  *Liberty Mut. Ins. Co. v. Wheelwright Trucking Co., Inc.*, 851 So.2d 466 (Ala. 2002) (time of occurrence under an insurance policy was when the claimant discovered cracking in trailers and ceased using the trailers); *American States Ins. Co. v. Martin*, 662 So.2d 245 (Ala. 1995) (mental anguish occurring after the expiration of insurance policies, was not covered, although the misrepresentation causing the mental anguish occurred during the coverage period); *State Farm Fire & Cas. Co. v. Gwin*, 658 So.2d 426 (Ala. 1995) (fraud and misrepresentation that took place within the policy period was not covered when the emotional distress related to the alleged misrepresentation would have occurred after the termination of the policy); *U.S. Fidelity & Guar. Co. v. Warwick Development Co.,* 446 So.2d 1021 (Ala. 1984) ("…we agree, that as a general rule, the time of occurrence of an occurrence of  an accident within the meaning of an indemnity

policy is not the time the wrongful act was committed but the time the complaining party was actually damaged.").   In this case the Underlying Suit filed on March 15, 2016 alleges negligent conduct and alleges the Goodens recently discovered the existence and presence of toxic mold in the areas of the home that were damaged by the lightning and fire event which GTR and CSI purportedly repaired, remediated and removed and/or cleaned.  [Doc. 1-1 and Ex. "1" at ¶ 15].  Any potentially covered damages occurred after the termination of the Owners Insurance policy on September 7, 2013.

"In an action wherein none of the claims is even potentially covered because it does not even possibly embrace any triggering harm of the specified sort within the policy period caused by an included occurrence, the insurance company does not have a duty to defend."  *See Scottsdale Ins. Co. v. MV Transp.,* 36 Cal. 4th 643, 31 Cal. Rptr. 3d 147, 115 P. 3d 460, 466 (Cal. 2005).  *See also American Motorists Ins. Co. v. Southern Sec. Life Ins. Co.,* 80 F.Supp.2d 1280 (M.D. Ala. 2000) (Despite a claim that injuries were ongoing through 1998, the Court held that injuries claimed by aggrieved parties arose from an alleged 1986 fraud discovered in 1996 and therefore there was no occurrence during a 1997-1998 policy period).  *Id* at 1284.  Here, any potentially covered claims are barred because they occurred prior to March 15, 2014 more than two years prior to filing of the Underlying Suit, or are not barred, but did not occur in the Owners Insurance policy period (ending September 7, 2013) because the damages were discovered on or after March 15, 2014 (within two years of filing of the Underlying Suit).

For the foregoing reasons, Owners Insurance has no obligation to defend or indemnify GTR against the allegations made by the Goodens in the Underlying Suit.

Owners Insurance asserts that the foregoing is dispositive of all coverage issues relating to the Underlying Suit and that judgment on the pleadings or, in the alternative, summary judgment is due to be granted in Owners Insurance's favor for the relief demanded by Owners Insurance in its complaint for declaratory judgment and relief.  [Doc 1. at pp. 13-15].   Following are additional reasons that Owners Insurance asserts Owners Insurance has no obligation to defend or indemnify GTR against the allegations made by the Goodens in the Underlying Suit.

### (2)     The Contractual Liability Exclusion Would Apply to Exclude Coverage Even If Claims for the Breach of Contract Were Alleged

As stated above, the Gooden's alleged damages for which the Goodens may pursue potentially covered tort claims must have occurred on or after March 15, 2014 to be timely.  Even if there were arguably some contractual liability claim alleged in the Underlying Suit against GTR, which there does not appear to be alleged against GTR, there would nevertheless be no coverage for such claims under the subject Owners Insurance Tailored Protection Policy.  The CGL coverage of the Owners Insurance Policy does not provide liability coverage for damages because of liability assumed in a contract unless the contract is defined as an "insured contract."   Section I, Coverage A of the Commercial General Liability coverage of the Auto-Owners policies contains a contractual liability exclusion 2.b.  The applicable exclusion provides:

> **2.     Exclusions**
>
> This insurance does not apply to:
>
> * * *
>
> **b.     Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

**(1)**     Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  However, if the insurance under this policy does not apply to the liability of the insured, it also does not apply to such liability assumed by the insured under an "insured contract".

**(2)**     That the insured would have in the absence of the contract or agreement.

[See Doc. 1-4 at p. 13 and 1-5 at p. 14].

The contractual liability exclusion excludes coverage for any liability for bodily injury or property damage for which the insured is obligated to pay by reason of the assumption of liability in a contract or agreement unless the contract is an "insured contract."  [See Doc. 1-4 at p. 28 ¶10 and 1-5 at p. 29 ¶10].  The Underlying Suit (Doc. 1-1, 1-2 and 1-3) does not allege breach of contract against GTR, and to the extent it might, such contract would not be an "insured contract" as defined in the Owners Insurance Policy.  [See Doc. 1-4 at p. 28 ¶10 and 1-5 at p. 29 ¶10].

In *Ajdarodini v. State Auto. Mut. Ins. Co.*, 628 So.2d 312 (Ala. 1993), the Alabama Supreme Court held that a contractor's general liability policy containing an identical contractual liability exclusion was "clear that the [plaintiff's] breach of contract claims were not eligible for coverage arising out of a construction contract under the policy."  See *id.* at 313.  For the same reason, there would be no coverage for any breach of contract cause of action even if asserted against GTR in the Underlying Suit.

For the foregoing reasons, Owners Insurance has no obligation to defend or indemnify GTR against the allegations made by the Goodens in the Underlying Suit, and judgment on the pleadings or, in the alternative, summary judgment is due to be granted in Owners Insurance's favor for the relief demanded by Owners Insurance in its complaint for declaratory judgment.

### (3)    The Fungi or Bacteria Exclusion Applies to Exclude Coverage

In this case, Owners Insurance also issued an endorsement that excluded from coverage bodily injury and property damage caused in whole or in part by mold, fungi or bacteria.  [See Doc. 1-4 at p. 44 and Doc. 5 at p. 45].  The endorsement at issue in this case excludes liability coverage for bodily injury, property damage, personal injury or advertising injury "<u>arising out</u> of, <u>in whole or part</u>, the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any 'fungi' or bacteria, whether airborne or not, on or within a building or structure ...." *See Id.* (emphasis supplied).  The exclusion adds: "This exclusion applies whether any other cause, event, material or product contributed concurrently or in any sequence to such injury."  *See Id.*; *see also State Farm & Cas. Co. v. Slade*, 747 So.2d 293 (Ala. 1999) (held in earth movement case that concurrent or sequential cause exclusions unambiguously exclude coverage for earth movement regardless of cause).

To the extent the Gooden's alleged damages consist of exposure to fungi or other bacteria, such as mold, those claims are all barred by the Fungi or Bacteria Exclusion. *See Pennsylvania National Mut. Cas. Ins. Co. v. The Retirement Systems of Ala.,* 104 F.Supp.3d 1313, 1319-20 (N.D. Ala. 2015) (Remediation and repair [damages] as a result

of condensation cannot be separated from remediation and repair as a result of the threat of mold … [and] fall within the policy's Fungi or Bacteria Exclusion."); *see also Insurance Co. v. Metcalf Realty Co. Inc.,* Civ Action No. 2:12-cv-02529 at ¶ III.A.2. (N.D. Ala. Aug., 30, 2013) ("Since [Plaintiff] alleges that his claims arise out of a mold and mildew problem, both of which the policy includes in its definition of 'fungi'… [plaintiff's pleading precludes coverage … under the plain language of the policy's fungi or bacteria exclusion.  Accordingly, the court finds that [the insurer] has no duty to defend or indemnify [the insured].").  The Eleventh Circuit has also ruled this type of exclusion is clear and unambiguous and applied to all claims for damages caused by bacteria or fungus in a building construction context.  *Empire Indemnity Ins. Co. v. Winsett,* 325 Fed. Appx. 849 (11th Cir. 2009); and *Hathaway Development Company v. Illinois Union Ins. Co.,* 274 Fed. Appx. 787 (11th Cir. 2008).  The Owners Insurance policy language in Endorsement 55238(6-04) is applicable to this case and mandates the enforcement of the exclusion to the claims asserted in the Underlying Suit. [See Doc. 1-4 at p. 44 and Doc. 5 at p. 45].

### (4)    The Underlying Complaint Does Not Allege Covered Damages

As stated above the Owners Insurance policy applies to bodily injury and property damage only if the bodily injury or property damage is "caused by an occurrence that takes place in the coverage territory" and only if the "bodily injury or property damage occurs during the policy period."  [See; Doc. 1-4 at p. 12 ¶ 1.b.(2) and Doc. 1-5 at p. 13 ¶ 1.b.(2); see also Ex. "4" and "5"].  Even if the Underlying Suit alleged damages "caused by an occurrence" which occurred "during the policy period" (which, as a matter of law,

would be barred by the applicable statute of limitations), the Underlying Suit does not allege covered damages because of "property damage" or "bodily injury" as those terms are defined in the policy.[2]   The Underlying Suit seeks the recovery of purely economic losses or damages to intangible property which do not, as a matter of law, fall within the definition of property damage. *American States Ins. Co. v. Martin,* 662 So.2d 245 (Ala. 1995).  The Alabama Supreme Court and the District Court for the Middle District have held that the loss of money or investment income do not qualify as property damage. *Thorn v. American States Ins. Co.*, 266 F.Supp.2d 1346 (M.D. Ala. 2002), *quoting American States Ins. Co. v. Martin*, 662 So.2d 245 (Ala. 1995).

In *Toole, supra*, Judge Thompson considered a declaratory judgment action regarding coverage under a similar Auto-Owners policy.  As stated previously, in *Toole,* the underlying suit involved state law claims relating to the sale and financing of automobiles.  Granting summary judgment in favor of Auto-Owners and finding that the complaint in the underlying action did not allege "property damage" within the meaning of the policies, the court stated:

> [T]he court also agrees with Auto-Owners that the claims in counts ten and eleven do not involve "property damage" within the meaning of the policies.  "Property damage" means "[p]hysical injury to tangible property, including all resulting loss of use of that property ... [or] [l]oss of use of tangible property that is not physically injured." The Alabama Supreme Court has accepted the following definitions of

---

[2] "Property Damage" is defined as "physical injury to tangible property, including all resulting loss of use of that property....or loss of use of tangible property that is not physically injured. [See Doc. 1-4 at p. 31¶ 18 and Doc. 1-5 at p. 32 ¶ 18].  "Bodily injury" means "bodily injury, bodily sickness or bodily disease sustained by a person, including death resulting from any of these at any time."  [See Doc. See Doc. 1-4 at p. 29 ¶4 and Doc. 1-5 at p. 30 ¶ 4].

"tangible property" and "intangible property":

" 'Tangible property is that which may be felt or touched; such property as may be seen, physical senses; that which is visible and corporeal; having substance and body as contrasted with incorporeal property rights such as franchises, chooses in action, copyrights, the circulation of a newspaper, annuities and the like. Tangible property must necessarily be corporeal, but it may be either real or personal.

" 'Intangible property is property which has no intrinsic and marketable value, but is merely the representative or evidence of value, such as certificates of stock, bonds, promissory notes, and franchises. Intangible property is quite different in nature from corporeal property, and there is an obvious distinction between tangible property and intangible property. Intangible property is held secretly; that is, it cannot be readily located, and there is no method by which its existence or ownership can be ascertained in the state of its situs, except, perhaps, in the case of mortgages or shares of stock. The value of intangible property is not easily ascertained.'" American States Ins. Co. v. Martin, 662 So. 2d 245, 248 (Ala. 1995) (quoting 73 C.J.S. Property § 15 at 184 (1983)). Because the damages that the state plaintiffs seek pursuant to counts ten and eleven are not for injury to tangible property, that is property "which may be felt or touched," the damages are not included within the definition of tangible property.

Similarly, the Underlying Suit alleges purely contractual and economic financial losses. *See L. Thomas Dev., Inc.*, at *4 (M.D. Ala. 2010). The alleged financial losses are not property damage. *See American States v. Martin, supra*. Any allegations of 'bodily injury", if any, could not, as a matter of law, occur until discovery of the wrong after the cancellation of the Owners Insurance policies. Accordingly, most, if not all, of the damages alleged by the Goodens simply do not allege covered property damage or

bodily injury as defined in the policies.[3]

### (5)   The Allegations of the Complaint Do Not Constitute An Occurrence and Do Not Invoke Coverage for a Defense or Indemnity

Section I, Coverage A of the Owners Insurance CGL coverage contained in the TPP policy expressly states that the insurance applies to bodily injury and property damage only if the bodily injury or property damage is "caused by an occurrence that takes place in the coverage territory" and only if "the bodily injury or property damage occurs during the policy period" and which is not known to have occurred prior to the policy period.  [See Doc. 1-4 at p. 12 and Doc. 1-5 at p. 13].

The CGL coverage of the subject Owners Insurance policy of insurance defines occurrence as an "accident including continuous or repeated exposure to substantially the same general harmful conditions."   [See Doc. 1-4 at p. 28 ¶10 and 1-5 at p. 29 ¶10]. Judge Myron Thompson expressly held such language in an "Owners Insurance policy is clear that, for there to be coverage, there must have been an "occurrence" and the policy defines an "occurrence" as "an accident".  *Auto-Owners Ins. Co. v. L. Thomas Dev., Inc.,* 2010 WL 2308190 at *3 (M.D. Ala. 2010).  Thus, the insuring agreement of the Owners

---

[3] It is undisputed that the complaint, as amended, in the Underlying Suit does not allege damages because of advertising injury or personal injury offense and thus, does not claim damages because of advertising injury or personal injury. [See Doc. 1-4 at p. 29 ¶ 2 and p. 39 ¶ 15; and Doc. 1-5 at p. 30 ¶ 2 and at p. 40 ¶ 15].  Furthermore, the "personal injury" or "advertising injury" must be caused by an offense committed in the "coverage territory" and during the policy period. Also, the definition of "personal injury" (Section V.15.) excludes coverage for "bodily injury".  The "personal injury" and "advertising injury" coverage also contains exclusions for knowing violation of rights of another or expected or intended injury (2.a.), criminal acts (2.d.), contractual liability (2.e.), breach of contract (2.f.), quality or performance of goods - failure to conform to statements or representations (2.g.), and wrong description of prices (2.h.), among others.  [Doc. 1-4 at p. 19 and Doc. 1-5 at p. 20].

Insurance policy provides that coverage is only available for damages because of bodily injury or property damage caused by an occurrence (i.e., an accident).[4]   Also, the occurrence or fortuity requirement is contained in the insuring agreement; therefore, the insured has the burden of proving by substantial evidence that its claimed loss or damage falls within the coverage of the policy.  *See State Farm Fire and Cas. Ins. Co. v. Shady Grove Baptist Church,* 838 So.2d 1039 (Ala. 2002); *see also L. Thomas Dev., supra,* 2010 WL 2308190 at *2.   Moreover, and as set forth in this brief, Exclusion 2.a. of Section I., Coverage A. of the CGL coverage further provides that the insurance does not apply to bodily injury or property damage expected or intended by the insured.  [See Doc. 1-4 at p. 13 ¶ 2.a. and Doc. 1-5 at p. 14 ¶ 2.a.].

Furthermore, the CGL coverage is not a warranty.  The CGL coverage does not insure against poor workmanship or defective work or product.  The CGL coverage only provides coverage for 'bodily injury' or 'property damage' occurring in the policy period and resulting from an occurrence, an accident, arising from such defects and/or poor workmanship.  *See Berry v. South Carolina Ins. Co.,* 495 So.2d 511 (Ala. 1985); *USF&G v. Warwick Development Co.,* 446 So.2d 1021 (Ala. 1984).

The Facts section of the original Complaint in the Underlying Suit alleges the conduct by the defendants in the Underlying Suit was intentional, gross, wanton,

---

[4] It is noted that the subject Owners Insurance TPP contains endorsement 55370 (1-07)(Subcontractor Caused Property Damage Coverage) which provides certain coverage for sums the insured becomes legally obligated to pay for "subcontractor caused property damage", and which may be or could become applicable.  With respect to the coverage provided by that endorsement, such damage is deemed to be caused by an "occurrence", is deemed not to have been expected or intended from the standpoint of the insured, and exclusion 2.l. is deleted and replaced. There are no facts alleged in the Underlying Suit suggesting the applicability of this coverage endorsement to the claims and damages alleged in the Underlying Suit.

malicious and/or oppressive.   [Doc. 1-1 at ¶¶ 24].   Each succeeding Count and claim alleged in the Complaint and amendments thereto in the Underlying Suit realleges and incorporates by reference all preceding paragraphs, including the allegation of intentional, gross, wanton, malicious and/or oppressive conduct.   [See Doc. 1-1 at ¶¶ 25, 32, 42, 52, 61, 65, 73, 76 and 80; Doc. 1-2 at ¶¶ 61 and 76; Doc. 1-3 at ¶ 84].   As previously noted, only Counts Seven (conversion/unjust enrichment), Eight (negligence and wantonness), and Nine (mold/nuisance0 contained in the original Complaint [Doc. 1-1], and Count Eight (negligence and wantonness) of the First Amended Complaint in the Underlying Suit [Ex. 1-2] assert claims against and demand judgment against GTR. [See Doc. 1-1, 1-2 and 1-3].

> **(a)   Allegations Of Conversion/Unjust Enrichment Do Not Constitute An Occurrence**

As stated, the second enumerated Count Seven alleging conversion adopts the allegations of intentional conduct and do not constitute an "occurrence".   Under Alabama law, "conversion is an intentional tort".   *Johnson v. Northpointe Apartments,* 744 So.2d 899, 904 (Ala. 1999).   Allegations of conversion and other were held in *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank,* 928 So.2d 1006 (Ala. 2005) to not constitute an occurrence under a liability policy.   *See Hartford,* 928 So.2d at 1008.[5]   The definition of 'occurrence' in the Hartford policy was identical to the definition of occurrence contained in the subject Owners Insurance policy.   *See Id.* at 1008.

---

[5] Even if characterized as a claim for unjust enrichment, such claims have been held not to constitute an occurrence.   *See Shane Traylor Cabinetmaker, LLC. v. American Resources, Inc.,* 126 So.3d 163, 165-6 (Ala. 2013) (Allegations of complaint including allegations of unjust enrichment did not constitute an occurrence).

### (b)   Allegations of Breach of Contract, If Any, Do Not Constitute an Occurrence

The Complaint, as amended in the Underlying Suit does not appear to allege breach of contract claims against GTR, but only against other Defendants.  [See Doc 1-1 at Count One and Doc. 1-3 at Count Ten].  Even if breach of contract was alleged against GTR, Owners Insurance's policy does not provide coverage for purely economic loss occurring from a breach of contract and a breach of contract does not constitute an "occurrence" as defined in the CGL coverage.  *See American States Ins. Co. v. Martin,* 662 So.2d 245 (Ala. 1990); *see also Reliance Ins. Co. v. Wyatt,* 540 So.2d 688 (Ala. 1989); *Ajdarodini v. State Auto Ins. Co.,* 628 So.2d 312 (Ala. 1993); *Auto-Owners Ins. Co. v. Toole,* 947 F.Supp. 1557 (M.D. Ala. 1996); *Custom Planning Dev. Inc. v. Amer. Nat. Fire Ins. Co.,* 270 Ga. App. 8, 10, 606 S. E. 2d 39 (Ga. App. 2004); *Hermitage Ins. Co. v. Champion,* 2010 WL 1711049 (M.D. Ala. 2010).

In *Owners Insurance Company v. Shep Jones Construction, Inc.,* 2012 WL 1642169 (N.D. Ala. 2012), the Northern District of Alabama looked at a factually similar case.  Shep Jones Construction, Inc. was hired by Elise Durbin to extensively renovate her home.  A dispute arose between Durbin and Shep Jones Construction, Inc. regarding the quality of the renovation.  Owners Insurance provided Shep Jones Construction, Inc. with CGL insurance coverage.  The Court held that Durbin's claims of breach of contract did not constitute an "occurrence."  The Court held:

> Durbin's breach of contract claim against Shep Jones Construction is not an 'occurrence' under Owner's policy, which defines an "occurrence" as an "accident."  The purpose of Owner's commercial general liability policy is to protect

> Shep Jones Construction from liability for essentially accidental injury to person or property, not to be a guarantee or a warranty that Owners stands behind the timeliness and quality of work Shep Jones Construction contracted to perform. To hold otherwise would improperly expand the scope of Owner's liability to Shep Jones Construction at great risk to Owners.

*See also R. N. Thompson & Associates, Inc. v. Monroe Guaranty Ins. Co.,* 686 N.E. 2d 160, 162-165 (Ind. App. 1997) (claims for breach of contract arising from faulty workmanship and design and from use of defective materials, and did not allege an occurrence), *citing, Indiana Ins. Co. v. Hydra Corp.,* 245 Ill. App. 3d, 926, 615 N.E. 2d 70 (1993) (alleged breach of contract was not an "occurrence" as contemplated by a CGL policy).

Furthermore, and as set forth above in Section III.A.2. of this brief, Section I, Coverage A of the CGL coverage contains a contractual liability exclusion (exclusion 2.b.) and the Owners Insurance policy does not provide liability coverage for damages because of liability assumed in a contract unless the contract is defined as an 'insured contract'.

### (c)   Allegations of Intentional Conduct Do not Constitute an Occurrence, and a Recharacterization of Claims as Negligence Claims Does not Constitute an Occurrence.

In *Auto-Owners v. American Central Ins. Co.*, 739 So.2d 1078 (Ala. 1999), the Alabama Supreme Court held "that although the claims in the underlying action alleged both intentional and unintentional acts, those claims were not severable so as to obligate the [insurer] to provide a defense as to some claims but not as to others." *Id.* at 1082; see also, *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank,* 928 So.2d 1006 (Ala. 2005)

(insured could not show an unexpected, unintended, or unforeseen result from its course of action, and the court thus held that there was no accident and no occurrence that would trigger the insurer's/Hartford's duty to defend).  In *State Auto Prop. and Cas. Ins. Co. v. Calhoun*, 2005 WL 2406055 (M.D. Ala. 2005), the court held that if claims in an underlying action allege both intentional and unintentional acts and the intentional claims are not severable from the unintentional claims, the insurance company is not required to defend the insured on the unintentional claims.  *State Auto Prop. and Cas. Ins. Co. v. Calhoun*, 2005 WL 2406055 (M.D. Ala. 2005), *quoting, Auto-Owners Ins. Co. v. American Central Ins. Co.*, 739 So.2d 1078, 1081 (Ala. 1999).

To the extent the any claims allege non-intentional conduct (i.e. negligence) based on the same underlying facts as the claims of intentional conduct, Owners Insurance is not required to defend either the intentional claims or the unintentional claims. *See e.g. Calhoun, supra*; *see also Hartford,* 928 So.2d at 1012 (The court also concluded allegations of negligence "merely dangles as a cause of action one that is unrelated to any asserted facts").

### (6)    The CGL Policy Excludes Coverage for Bodily Injury or Property Damage Expected or Intended by the Insured

In addition to the above argument regarding the absence of an 'occurrence', Section I, Coverage A, Exclusion 2.a. of the Commercial General Liability Coverage also specifically states that 'this insurance does not apply to bodily injury or property damage expected or intended from the standpoint of the insured." [See Doc. 1-4 at p. 13 ¶ 2.a.

and Doc. 1-5 at p. 14 ¶ 2.a.].[6]  This exclusion excludes coverage for conduct expected or intended by the insured.  *See State Auto Prop. and Cas. Ins. Co. v. Calhoun,* 2005 WL 2406055 at *5 (M.D. Ala. 2005).  Thus, any claims such as the Gooden's conversion claim are excluded.  Furthermore, in *State Auto Prop. and Cas. Ins. Co. v. Calhoun*, 2005 WL 2406055 (M.D. Ala. 2005), the court addressed an identical exclusion related to acts intended or expected by the insured and held negligence claims were also excluded, stating:

> As the policy excludes defense of claims based on intentional acts, the Court holds that State Auto is not required to defend Calhoun on the conspiracy charge. The only other allegations against Calhoun are contained in Counts Six and Seven of the amended state court complaint. Count Six alleges that Calhoun "willfully, wantonly or negligently" caused or allowed the decedent to execute the deed when she knew or should have known he was not competent to do so.  Count Seven alleges that Calhoun "willfully, wantonly or negligently" exercised undue influence over the decedent, thereby causing him to execute the deed, when she knew or should have known she was exercising undue influence.  These both allege negligent acts, and thus are arguably covered by the "property damage caused by an occurrence" clause of the insurance policy. However, if claims in an underlying action allege both intentional and unintentional acts and the intentional claims are not severable from the unintentional claims, the insurance company is not required to defend the insured on the unintentional claims. See, *Auto-Owners Ins. Co. v. Amer. Central Ins. Co.*, 739 So. 2d 1078, 1081 (Ala. 1999).  Here, the negligence claims are based on the same underlying facts as the claims of intentional conduct, and therefore are not severable.  Thus, State Auto has no obligation to defend

---

[6] See fn. 4.

> Calhoun on the negligence claims, that is, Counts Six and
> Seven of the amended state court complaint.

*Id.* at * 6.

In this case, the Facts section of the original Complaint in the Underlying Suit alleges the conduct by all defendants in the Underlying Suit was intentional, gross, wanton, malicious and/or oppressive. [Doc. 1-1 and Ex. "1" at ¶ 24]. Each succeeding Count and claim alleged in the Complaint and amendments thereto in the Underlying Suit reallege and incorporate by reference all preceding paragraphs and these allegations. [Doc. 1-1 and Ex. "1" at ¶¶ 24, 25, 32, 42, 52, 61, 65, 73, 76 and 80; Doc. 1-2 and Ex. "2" at ¶¶ 61 and 76; Doc. 1-3 and Ex. "3" at ¶ 84]. These allegations are specifically adopted in the claims alleged against GTR in the Underlying Suit. [See Doc. 1-1 and Ex. "1" at ¶¶ 24, 73, 76 and 80; Doc. 1-2 and Ex. "2" at ¶ 76]. Thus, even if potentially covered damages because of negligent conduct occurred within the Owners Insurance policy period (which it could not and a viable non-barred claim), and to the extent any such claims are based on the same underlying facts and alleged intentional conduct, the claims are not severable and Owners Insurance would have no obligation to defend GTR as to such claims. See *Calhoun, supra,* 2005 WL 2406055 at * 6; *Hartford*, 928 So.2d 1012 (Ala. 2005) *see also Hartford,* 928 So.2d at 1012 (allegations of negligence "merely dangles as a cause of action one that is unrelated to any asserted facts"); *Auto-Owners v. American Central, supra, at* p. 1081.

### (7)   The Business Risk Exclusions Appear Applicable to Exclude Coverage

As stated above, the Underlying Suit does not allege any potentially covered

claims for damages because of bodily injury that could have occurred during the Owners Insurance policy period, and the Underlying Suit does not allege damages because of personal injury or advertising injury as defined in the CGL coverage of the Owners Insurance policy.[7]  Furthermore, most if not all of the damages alleged are for contractual losses or economic losses which are not "property damage" as defined in the Owners Insurance policy.  Moreover, the CGL coverage of the Owners Insurance policy contains a number of exclusions including exclusions 2.j., 2.k., 2.l.,[8] 2.m and 2.n which might be applicable coverage even if the Goodens alleged "property damage" within the policy period.  These exclusions are often referred to as the "business risk" exclusions and read as follows:

> **j.      Damage to Property**
>
> 'Property damage' to:
>
> (1)      Property you own, rent, occupy or use, including any cost or expense incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason including prevention of injury to a person or damage to another's property;
>
> (2)      Property that any of your:
> (a)      'Employees';
>
> (b)      'Volunteer workers';
>
> (c)      Partners or members (if you are a partnership or joint venture); or

---

[7] See fn. 3.
[8] See fn. 4.

        (d)     Members (if you are a limited liability company)

Own, rent, occupy or use. However, this exclusion j(2) shall not apply to your liability for damage to such property;

     (3)     Premises you sell, give away or abandon, if the 'property damage' arises out of any part of those premises;

     (4)     Property loaned to you;

     (5)     Personal property in the care, custody or control of, or over which physical control is being exercised for any purpose by any insured;

     (6)     That particular part of real property on which any insured or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or

     (7)     That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.

Paragraphs (1), (2), (4) and (5) of this exclusion do not apply to 'property damage' (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage to Premises Rented to You as described in Section III – Limits of Insurance.

Paragraph (3) of this exclusion does not apply if the premises are 'your work' and were never occupied, rented or held for rental by you.

Paragraphs (4), (5), (6) and (7) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (7) of this exclusion does not apply to 'property damage' included in the 'products-completed

operations hazard'.

**k.    Damage to Your Product**

'Property damage' to 'your product' arising out of it or any part of it.

**l.    Damage to Your Work**

'Property damage' to 'your work' arising out it or any part of it and included in the 'products completed operations hazard'.

**m.    Damage to Impaired Property or Property Not Physically Injured**

'Property damage' to 'impaired property' or property that has not been physically injured, arising out of:

(1)     A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use.

**n.    Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)    'Your product';

(2)    'Your work'; or

(3)    'Impaired property'

47

> If such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

[See Doc. 1-4 at pp. 16-17 and Doc. 1-5 at pp. 17-18].

The Owners Insurance CGL policy exclusions k, l, m also exclude coverage for property damage to the 'insured's work', the 'insured's product' and 'impaired property' that has not been physically injured arising out of a defect, deficiency, inadequacy or dangerous condition to the insured's work or product. *See Berry v. South Carolina Ins. Co.,* 495 So.2d 511, 513 (Ala. 1985) (affirming summary judgment for the insurer in a declaratory judgment action stating "all of the damages are related to the work done pursuant to the contract [and] the insurance policy specifically addresses this type of damage in its 'work product exclusion'"); *see also Owners Insurance Company v. Shep Jones Construction, Inc.,* 2012 WL 1642169 (N.D. Ala. 2012) (business risk exclusions barred coverage where the damages alleged arose from the insured's work product); *Auto-Owners Ins. Co. v. Chorak & Sons, Inc.,* 2008 WL 3286986 at *2-4 (N.D. Ill. Aug. 8, 2008), (excluding damage to house under 2.j exclusions noting CGL policies 'are intended to protect the insured from liability for injury or damage to the persons or property of others; they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products'), *citing, Travelers,* 258 Ill. Dec. 792, 757 N.E. 2d at 503; *State Farm Fire and Cas. Co. v. Tillerson,* 334 Ill. App. 3d 404, 268 Ill. Dec. 63, 777 N.E. 2d 986, 993 (Ill. App. Ct. 2002) ("these exclusions are premised on the theory that liability policies are not intended to provide protection against the

insured's own faulty workmanship or product, which are normal risks associated with the conduct of the insured's business.").

(8)     **There is No Coverage for Punitive Damages**

Under Alabama law, punitive damages are not recoverable for negligence or unintentional tortious conduct.  Punitive damages are only recoverable if the conduct is intentional or wanton.  *See Ga. Farm Bur. Mut. Ins. Co. v. Hall County,* 586 S.E. 2d 715, 718 ("facts necessary to support punitive damages require a level of intent greater than that necessary to trigger the 'intended or expected exclusion' in an insurance policy").  As stated earlier, intentional wrongful conduct would not constitute an "occurrence" (i.e., an accident) under the CGL coverage of the Auto-Owners TPP insurance policies.  Furthermore, the CGL coverage, Exclusion 2.a. excludes coverage for bodily injury or property damage expected or intended from the standpoint of the insured.  [See Doc. 1-4 at p. 13 ¶ 2.a. and Doc. 1-5 at p. 14 ¶ 2.a.].  Therefore, there is no coverage for any award of punitive damages.

(9)     **Other Defenses to Coverage**

In addition to the foregoing reasons, Owners Insurance has set forth in Owners Insurance's Complaint for Declaratory Judgment and relief (Doc. 1) additional secondary reasons compelling a finding of no coverage for defense or indemnity under the Owners Insurance's policies.  In setting forth the arguments herein, which Owners Insurance asserts are fully dispositive of this action, Owners Insurance does not waive any other grounds set forth by Owners Insurance in support of its Complaint for Declaratory Judgment and Relief.  [Doc. 1 at pp. 6-12].

**B.      Alternatively, Judgment by Default is Proper As To Certain Defendants**

The Clerk previously entered the default of the Gooden Defendants.   [Doc. 14].   In addition to the foregoing.   Judgment by default for the relief demanded in Owners Insurance's Complaint (Doc.1) could also be properly entered in favor of Owners Insurance and against the Gooden Defendants pursuant to Rule 55(a)(2) of the *Federal Rules of Civil Procedure* contemporaneously with the entry of judgment on the pleadings or summary judgment in favor of Owners Insurance as to Defendant GTR.

## CONCLUSION

For the reasons set forth in Owners Insurance's Complaint for Declaratory Judgment and Relief, and in the foregoing brief, Owners Insurance's Evidentiary Submission, and in Owners Insurance's Motion for Judgment on the Pleadings or, in the alternative, Motion for Summary Judgment, or Motion for Judgment by Default as to Certain Defendants filed contemporaneously herewith, this Honorable Court should enter judgment on the pleadings in favor of Owners Insurance pursuant to Fed. R. Civ. P. 12(c) or, alternatively, should enter summary judgment in Owners Insurance's favor pursuant to Fed. R. Civ. P. 56 against all Defendants or default judgment pursuant to Fed. R. Civ. P. 55(a)(2) as to the Gooden Defendants.   In the event the Court determines that this action may not be disposed of in its entirety upon the pending motions, Owners Insurance Company moves this Honorable Court to enter judgment on the pleadings or, alternatively, summary judgment in favor of Owners Insurance as to those Defendants and/or as to those issues, claims, damages and/or actions upon which the court determines judgment on the pleadings or, alternatively, summary judgment in favor of

Owners Insurance is proper.

Respectfully submitted this the 12th day of July, 2018.

s/ Joel H. Pearson
**JOEL H. PEARSON, PEA019**
***Attorney for Plaintiff Owners Insurance Company***

**OF COUNSEL:**
MORROW, ROMINE & PEARSON, P.C.
122 South Hull Street
P.O. Box 4804
Montgomery, Alabama 36103-4804
Telephone:    (334) 262-7707
Facsimile:    (334) 262-7742
jhpearson@mrplaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing document upon the following parties or attorneys electronically through the Court's CM/ECF system and/or by mailing the same by placing a copy in United States Mail, postage prepaid, on this the 12th day of July, 2018.

Jonathan K. Corley
WHITTELSEY, WHITTELSEY, POOLE & CORLEY, P.C.
Post Office Box 106
Opelika, Alabama 36803–0106
*Attorney for Defendant GTR, Inc.*

Eddie Gooden
Catherine Gooden
P.O. Box 331
Lafayette, Alabama 36862-2625

Respectfully submitted,

s/ Joel H. Pearson
JOEL H. PEARSON (PEA019)
*Attorney for Plaintiff Owners Insurance
Company*
MORROW, ROMINE & PEARSON, P.C.
P.O. Box 4804
Montgomery, Alabama 36103-4804
Telephone: (334) 262-7707
Facsimile:  (334) 262-7742
jhpearson@mrplaw.com